BENTON B. GAITAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gaitan v. Commissioner
Docket No. 16299-82.
United States Tax Court
T.C. Memo 1988-580; 1988 Tax Ct. Memo LEXIS 609; 56 T.C.M. (CCH) 921; T.C.M. (RIA) 88580; December 27, 1988
Benton B. Gaitan, pro se. Robert M. Fowler, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: This case was assigned to Special Trial Judge Marvin F. Peterson pursuant to section 7443A(b) [1] of the Code and Rules 180, 181 and 183. The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined a deficiency in petitioner's 1981 Federal income tax in the amount of $ 36,515.80. Petitioner resided at the Central Missouri Correctional Center, Church Farm, *610 Jefferson City, Missouri, at the time this petition was filed. Petitioner failed to file a tax return for the year 1981. Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Sometime during January 1981, the Kansas City Area Transportation Authority (ATA) received an anonymous tip that petitioner was selling counterfeit bus passes. The informant continued contacting the ATA on several occasions during February, March and April concerning the sale of counterfeit bus passes. The informant reported that approximately 1,500 counterfeit bus passes were sold each month by petitioner who had hired 15 to 20 individuals to sell the bus passes at $ 10 each. In addition, the informant stated that petitioner had purchased a printing press and the necessary ink and paper to reproduce ATA bus passes. ATA was informed that during January through March, petitioner produced the ATA bus passes in the basement of his sister's home. After the initial call from the informant, ATA hired a private investigating firm to follow-up on the information received from the informant. ATA's private investigation *611 convinced ATA officials that counterfeit bus passes were being sold by petitioner. On June 17, 1981, officials of ATA, along with their private investigators, met with two detectives from the Kansas City Police Department to report the illegal sale of bus passes. A subsequent investigation made by the police concerning the alleged sale of counterfeit bus passes confirmed ATA's suspicion that counterfeit bus passes were being sold by petitioner. The investigation also revealed that during 1980 petitioner had purchased printing equipment capable of printing the counterfeit bus passes. Also, during 1981, petitioner purchased jewelry for $ 2,352, a motorcycle for $ 4,000 and a Cadillac for $ 7,500. As a result of the police investigation, search warrants were served at petitioner's place of business and personal residence. The search uncovered trash bags of paper with imprints of ATA bus passes for September 1981, printing plates which had the imprint of an ATA bus pass for September 1981, ATA logo and bus pass numbers, 8181 ATA bus passes for August 1981, 1,817 ATA bus passes for September 1981, $ 892.03 from petitioner's person and $ 15,600 from petitioner's safe deposit box. *612 Petitioner was arrested on August 27, 1981, and charged with forgery, possession of forged documents, and possession of instruments to commit forgery. On February 23, 1982, petitioner pleaded guilty to one count of forgery. Respondent was informed of the counterfeiting operation by the Kansas City Police Department and began an income tax audit of petitioner's 1981 income tax return. In the notice of deficiency, respondent determined that petitioner sold counterfeit bus passes from January 1981 through August 1981, the period of time that counterfeit bus passes were being used. On this basis, respondent determined that petitioner received $ 80,000 of gross receipts from the sale of counterfeit bus passes during 1981. Petitioner contends that he did not sell any ATA bus passes. He admits that he purchased the printing press and related printing materials. Also, he admits that counterfeit bus passes were found in his printing shop. However, he claims that the bus passes were printed by Scott McFarland. Petitioner testified that he met Mr. McFarland through a friend he met while he was employed by Moss Printing Company. Petitioner contends that he was offered the opportunity *613 to get into the printing business by Mr. McFarland. He testified that Mr. McFarland agreed to advance the necessary funds to purchase a printing press and the necessary materials and that he was told that they would print business cards and letterheads. Petitioner stated that he received approximately $ 900 per month from January through August 1981 from the printing business. Petitioner contends that he was not aware of the counterfeiting operation until he found some unused bus passes in the office where the printing press was located. Petitioner stated that he believes that Mr. McFarland was responsible for printing the counterfeit bus passes and that he was being used by Mr. McFarland as a cover for the counterfeiting scheme. In essence petitioner maintains that he was an innocent bystander and that he was duped by Mr. McFarland into believing that they were conducting a bona fide printing business. Respondent contends that petitioner's testimony is pure fabrication and that petitioner was the individual responsible for the counterfeiting operation. Although petitioner contends that he did not receive any income from the counterfeit bus pass operation, he has failed to come *614 forth with any persuasive evidence to substantiate his claim. Petitioner's evidence is limited to his self-serving statements that he was not involved in the counterfeit operation which we do not believe. He has failed to adequately explain the source of the cash found in his safe deposit box and savings account. Although petitioner argues that the cash was earned while he was incarcerated, petitioner has failed to introduce any records or other reliable evidence to support his claim. Petitioner's position is not supported by the record and is totally without merit. However, the evidence does support respondent's position that petitioner received unreported income from the counterfeiting of bus passes. Respondent's determination is supported by the fact that petitioner had in his possession counterfeit bus passes and was indicted and pleaded guilty to forgery. Further, petitioner has failed to explain his possession of large amounts of cash and the purchase of the motor vehicles and jewelry. Although petitioner maintains that the cash he had in his possession and that the vehicles were purchased with income he earned while in prison, petitioner has failed to introduce any business *615 records or other evidence to support his assertion. Petitioner now contends that he received approximately $ 7,200 from printing business cards and letterheads, but has failed to show any evidence of such business. Also the fact that he failed to report any income from this source for the year 1981 negates his current admission. Respondent calculated petitioner's income from selling counterfeit bus passes by using the number of bus passes sold during the month of August and an average price per bus pass to arrive at the monthly income figure. Respondent then multiplied this amount by eight, the number of months that counterfeit bus passes were being sold during the year in issue and arrived at a gross receipts figure of $ 80,000. Respondent allowed offsetting expenses in the amount of $ 1,335. Although petitioner does not dispute respondent's method of calculating the gross receipts from the sale of ATA bus passes since he maintains that he was not involved in the counterfeit operation, we feel it is necessary to comment on respondent's calculation of gross receipts. Under the circumstances of this case, respondent had no alternative but to use an indirect method to calculate *616 petitioner's income from the sale of ATA bus passes. It is proper to use an indirect method to calculate income where the method used is reasonable. See Denison v. Commissioner,T.C. Memo. 1984-185, affd. 751 F.2d 241 (8th Cir. 1985). We think respondent's recalculation of income is reasonable. The police report shows that 1,500 counterfeit bus passes were being sold each month at $ 10.00 per bus pass. Respondent calculated petitioner's gross income by using a figure of 1,000 bus passes per month, thereby giving petitioner an allowance for sales commissions and other sales expenses. Respondent also allowed petitioner business expenses for rent, paper, ink and miscellaneous supplies totalling $ 1,335 for the 8-month period, which we think is reasonable. Petitioner had an opportunity to cross examine respondent's witness pertaining to the calculation, but had no questions. Petitioner simply maintains he was not involved in the counterfeit operation. Petitioner also failed to explain the $ 15,000 found in his safe-deposit box, the purchase of approximately $ 2,300 worth of jewelry or the $ 7,500 spent for the purchase of the Cadillac automobile. *617 Petitioner maintains he earned the money selling cookies in prison. However, at the trial of this case, he failed to explain his failure to file tax returns or to keep records showing such earnings. Petitioner's vague testimony is insufficient to overcome his burden to show that respondent's determination is in error. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩